EXHIBIT

A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LOCAL UNION NO. 459 OF THE     )
INTERNATIONAL BROTHERHOOD OF   )
ELECTRICAL WORKERS, AFL-CIO,   )
            Plaintiff          )
                               )
        v.                     )     CIVIL ACTION NO. 04-347 ERIE
                               )
PENNSYLVANIA ELECTRIC COMPANY, )
A FIRST ENERGY COMPANY,        )
            Defendant          )

STATUS CONFERENCE

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Judge's Chambers, U.S. Courthouse, Erie,

Pennsylvania, on Thursday, April 28, 2005.

APPEARANCES:
            MARIANNE OLIVER, Esquire, appearing on behalf of
            the Plaintiff.

            GARY W. SPRING, Esquire, and TIMOTHY A. HAYES,
            Esquire, appearing on behalf of the Defendant.

            Ronald J. Bench, RMR - Official Court Reporter

2

1                    P R O C E E D I N G S

2

3              (Whereupon, the proceedings began at 1:30 p.m., on

4    Thursday, April 29, 2005, in Judge's Chambers.)

5

6              THE COURT:  This is the time we set for status at

7    04-347 Erie.  I've had a chance to review the pleadings.  I

8    guess, boiled down to its essence as I understand, this is what

9    this is about.  I have before me a complaint requesting that I

10   compel arbitration.  The company has taken the position, I

11   gather, that pursuant to, I believe it's Article VII of the

12   collective bargaining agreement, that essentially these

13   retirees lack standing, is really what it boils down to, they

14   are neither members or employees, members of the collective

15   bargaining agreement, nor employees.  I guess more accurately,

16   I should say, therefore, the local is going to bat for a group

17   that has no standing under the collective bargaining agreement.

18   And tell me a little bit about specifically how the benefits

19   were changed -- are we talking about medical benefits or what?

20             MS. OLIVER:  Your Honor, thank you for, first of

21   all, allowing me to bring a shadow with me.  But in specific

22   response to your question, the grievance that we filed, the

23   underlying grievance was filed on behalf of employees who were

24   active employees when asked to sign a certain form.  Our

25   grievance was filed under the theory that that form, which

3

1   could alter terms and conditions for those persons, was not

2   bargained with the union.  There's a clause in the contract

3   that requires that the employer keep in effect all current

4   practices and so forth.  So just to clear up our position, this

5   was asked, employees were asked to sign this, which is why we

6   grieved.  I don't think there's any question about the fact

7   that that form could have an effect -- an adverse effect on

8   these individuals as retirees.  But they do bargain, this union

9   bargains retiree medical benefits.  And, of course, as active

10  employees, those active employees give up part of their bargain

11  in order to insulate those retiree medical benefits at a

12  snapshot in time under the labor agreement.

13          THE COURT:  There is, if I remember, it's Exhibit B

14  to the complaint, a rather abbreviated agreement, is there

15  anything of record here which is more expansive as to what this

16  is all about?

17          MS. OLIVER:  No.  Ordinarily, the union is not

18  required to give --

19          THE COURT:  Bare bones.

20          MS. OLIVER:  The labor agreement is attached to the

21  complaint, and the labor agreement does set forth the provision

22  that we are relying on, which is Article II, Section 3.

23          THE COURT:  What does it say in pertinent part?

24          MS. OLIVER:  In pertinent part under Section 3,

25  "all existing practices for the benefit and welfare of the

4

1    employees of the company, presently in effect and not

2    specifically covered by the terms of this agreement, shall be

3    continued," I could go on.

4              THE COURT:  That's the essence of it?

5              MS. OLIVER:  Yes.

6              THE COURT:  What's the company's position?

7              MR. SPRING:  We would like their grievance defined.

8    There's no reference in the grievance whatsoever to anything

9    about the form.  It talks about the company unilaterally

10   changing medical benefits.

11             THE COURT:  What are you reading?

12             MR. SPRING:  Exhibit D.  Quite frankly, it seems

13   like an effort to back door an issue before an arbitrator.  The

14   form talks about the fact that the company has the right to

15   change certain things -- medical and so forth.  Apparently,

16   that's how they want to try to get to the underlying issue.

17   I think it's quite clear, your Honor, that the case law holds

18   retirees are not represented by the union, they don't have the

19   right to grieve.  And the language of the collective bargaining

20   agreement certainly supports that, too.  Because it talks about

21   active bargaining unit members.  Talks about employees and how

22   they must present their grievance.  It doesn't give any right

23   for retirees to grieve.

24             THE COURT:  Did you want to say something?

25             MS. OLIVER:  Well, again, these are not retirees who

5

1    are asked to sign this form.  This form is being asked --

2              THE COURT:  Tell me again, I apologize for running

3    over the same ground, but the form, that a number of, I gather,

4    current employees were asked to sign, says what?

5              MS. OLIVER:  Well, it says that, in pertinent part,

6    it says that I understand that the company reserves the right

7    to terminate or change its retiree group health and group life

8    insurance coverage at any time.  So they're being asked as an

9    active to sign that form.

10             THE COURT:  Have you asked on behalf of the current

11   employees who have been asked to sign that form, have you

12   grieved that or asked to grieve that on behalf of current

13   employees?

14             MS. OLIVER:  Yes.

15             THE COURT:  To which I presume there is no

16   objection?

17             MR. SPRING:  Well, I think there's objection to, the

18   form's been utilized for a long time, I'm not even sure a

19   grievance would be timely.

20             THE COURT:  That's a different issue.  The question

21   is whether that would be an arbitrable matter.  If strikes me

22   if your position is it is not arbitrable because the retirees

23   are neither members of the collective bargaining agreement, not

24   employees, that clearly would not be true of these active

25   employees who have been asked to sign this.  My question is

6

1    does your grievance subsume these active employees?

2            MS. OLIVER:  Our grievance was filed on behalf of

3    actives, there's no question about it.

4            THE COURT:  Is there some basis for resisting

5    arbitration insofar as active employees are concerned?

6            MR. SPRING:  If it were actives, it was an active

7    employee issue.  It's a retiree issue.  It's just sort of a

8    rouse to get there.  If we had these people sign the forms the

9    day after they retired, there would be no issue.  We do so as a

10   convenience for them before they retire, they sign the form.

11           MS. OLIVER:  And that's the very nub of it, your

12   Honor.

13           THE COURT:  I'm beginning to see it now.  What

14   you're doing is you are asking present employees to sign a form

15   with respect to the treatment of benefits that they will only

16   receive when they become retirees, is that right?

17           MR. SPRING:  Correct.  It's a benefit election,

18   retirement election form.

19           MS. OLIVER:  Our problem, though --

20           THE COURT:  Let me ask one other question, then I'll

21   hear more of your problem.  Let me follow-up with you.  Putting

22   aside the arbitrability issue, why is it your position, I

23   gather it is under the terms of the collective bargaining

24   agreement, why does a requirement like that run afoul of your

25   collective beginning agreement?

7

1          MS. OLIVER:  Because our collective bargaining

2    agreement does not permit the employer to make changes in

3    employment conditions.

4          THE COURT:  That would be a bargain for retirement?

5          MS. OLIVER:  Correct.  Our labor contract has

6    negotiated retiree medical benefits in it.  And I know this is

7    probably getting too far along, but cases on ERISA retiree

8    medical, sometimes turn on intent and what was said and by

9    people at the time they retired.  That's why the significance

10   of them signing this form as actives is very important.

11         THE COURT:  This case isn't on all fours, probably

12   not on all threes or twos with this, this is reminding me of a

13   case I had, I know you folks do a lot of work in this area,

14   Erie County Retirees.

15         MS. OLIVER:  I know the case.

16         THE COURT:  It's all coming back to me now.  But in

17   a slightly -- in an age context.  So I guess let me ask this.

18   Even though the folks who want to grieve this are, in your

19   view, grieving something that has really not yet occurred yet

20   and will only potentially occur once they achieve retiree

21   status, nevertheless, they are at present employees.  Even

22   though they are grieving a prospective event, which will only

23   occur after they cross the happy goal line into retirement

24   status, why for present purposes -- isn't the focus on the

25   status of the individual, as opposed to the timing of the

8

1    event?

2          MR. SPRING:  Well, I guess -- when they prefer to go

3    to a grievance or arbitration, there's a case of controversy at

4    that point.

5          THE COURT:  Just by way of picking your brain, I

6    have no fixed opinion on this one way or the other.

7    Presumably, the company would not have requested that the form

8    be signed unless they thought there was some reasonable

9    likelihood that at some point in the future they might tinker

10   with the benefits?

11         MR. SPRING:  It's been in the summary plan

12   descriptions and documents forever.  Quite frankly, this is

13   kind of a new theory that developed after they went through the

14   grievance procedure.  We never heard anything about the forms.

15         THE COURT:  What grievance procedure, I didn't think

16   you got off the ground?

17         MS. OLIVER:  We did not get off the ground.

18         MR. SPRING:  There's some minutes and things.

19         THE COURT:  What did you do to initiate the

20   grievance, what do you do under the terms of the collective

21   bargaining agreement to get the grievance rolling towards

22   arbitration?

23         MS. OLIVER:  A grievance was filed by the business

24   agent, her father, after it was filed at the low level steps of

25   supervision, the business manager in the union, a member with a

9

1    low level supervisor.  Letters were sent about what the

2    grievance was about.  He answered that letter.  I answered a

3    letter to in-house counsel.  And they wouldn't arbitrate.

4    Which I asked them to arbitrate.  They wouldn't, so --

5              THE COURT:  Let me ask you this.  As a class of

6    individuals on behalf of whom this local is attempting to go to

7    bat at arbitration, is that class comprised at all of anyone

8    who has already retired?

9              MS. OLIVER:  Probably.  But when they were asked to

10   sign this form, they were all actives.  How this arose was --

11             THE COURT:  Let me tell you what my problem is here.

12   This is probably my problem not yours.  This dispute remains

13   after 15 minutes quite ill-defined for me.  I'm having a real

14   problem with this.  Tell me if I got it right this time.  The

15   local wants to arbitrate the grievance, which, essentially, the

16   company's right to unilaterally change certain types of

17   retirement benefits -- I gather you'll be happy if they're

18   increased or eliminate them, on behalf of both employees who

19   are presently employed but have been required to sign this

20   agreement and on behalf of those who are in fact retired but

21   would be affected by this change, is that right?

22             MS. OLIVER:  Well, it's correct with regard to the

23   actives, yes, not the retirees.

24             THE COURT:  I just asked a minute ago if any member

25   of the class on behalf --

10

1                MS. OLIVER:  Has since retired since the grievance

2  arose?

3                THE COURT:  Yes.

4                MS. OLIVER:  I'm sorry, I guess that would be the

5  case.

6                THE COURT:  Let me ask another question here.  Isn't

7  this all much ado about nothing, I mean, if you really sit down

8  and think about this, now that I thought about it, as long as

9  there is one current employee, it seems to me, who objects to

10  the requirement to sign this form, then it strikes me at first

11  blush that it's arguably arbitrable because the person is an

12  active employee.  So if you -- and then whatever decision would

13  be rendered there, without any retirees officially being part

14  of the grievance procedure, would necessarily impact on all

15  present employees and presumably they are de facto future

16  retirees.  But you don't run the problem of mixing the two

17  together, what am I missing here?

18                MR. SPRING:  I think you're right, it's more

19  arbitrable that way.  But they're trying to get to the same

20  issue by using a form to get there.

21                THE COURT:  It goes away, at least my problem goes

22  away.  Then it becomes a substantive issue for the arbitrator.

23  It never would be a substantive issue for me, it's simply

24  arbitrability?

25                MR. SPRING:  Correct.

11

1      THE COURT:  So, for the record, then, to dispel any

2  confusion which might heretofore had existed, are you grieving

3  this only on behalf of active employees?

4      MS. OLIVER:  That's correct, your Honor.

5      THE COURT:  We seem to be making some good progress,

6  keep going.

7      MS. OLIVER:  The employer does not have the right to

8  make unilateral changes in existing practice, in this case the

9  form.

10     THE COURT:  I don't know what that means in this

11  case, existing practice in this case the form.  What is

12  existing practice and what's going to be changed?

13     MS. OLIVER:  That the methodology or how these

14  employees sign up for retirement did not contain a provision

15  that said they understand that their benefits can change.

16     THE COURT:  In other words, are you saying up to

17  this point prior to the requirement of this form, any change of

18  benefits of the nature contemplated by that form would have

19  required that it be bargained over?

20     MS. OLIVER:  Exactly.

21     THE COURT:  That's your point?

22     MS. OLIVER:  And the labor agreement does state --

23     THE COURT:  That's their grievance.  It doesn't

24  matter whether you agree with it, you know what it is?

25     MR. SPRING:  Correct.

12

1          THE COURT:  All right.  Now, let's go off the record
2     for a minute.
3          (Discussion held off the record.)
4          THE COURT:  Go ahead.
5          MR. HAYES:  Their grievance is they object to us
6     having them sign the form and it doesn't go to the issue as to
7     whether or not the company has the right to change the medical
8     benefits of retirees.  If it's limited to that company and the
9     company has been very consistent with we're willing to
10    arbitrate, but we need to know what we're going to arbitrate
11    before we get to an arbitrator.  Once we submit arbitrability
12    to an arbitrator, we have given our rights to the arbitrator.
13    When in fact that is an issue as to the arbitrability of the
14    substance of it belongs in the courts.
15         THE COURT:  To be clear, the issue of arbitrability
16    belongs in the courts.  The issue of merits belongs before an
17    arbitrator.
18         MR. SPRING:  Our point would be if the retiree wants
19    to challenge some action, that should be an action under ERISA
20    and bring it to court.
21         THE COURT:  I've just been told retirees will not be
22    doing that, this will be a grievance restricted solely to
23    active employees, is that correct?
24         MS. OLIVER:  Correct.
25         THE COURT:  Don't look a gift horse in the mouth.

13

1           MR. SPRING:  I'm not so sure it's a great gift.

2           MS. OLIVER:  First of all, the employer was told, in

3    my letter to you, Tim, dated January 3rd, I told you exactly

4    what we were grieving.  And I might add one of the union

5    officers was going to retire.  I think it's screaming volumes

6    that he was not asked to sign this form.  Other union people

7    were asked to sign this form.  The union wasn't told about this

8    form.  If you take a look at ERISA medical cases and if some

9    participants, a retiree decides to sue them under ERISA, one of

10   the things courts look at is what did people believe they had

11   at the time they retired.

12          THE COURT:  Let me ask you this.  If the employees

13   were not being asked to sign this form -- and yet the company

14   announced a policy that in the future it would or could or

15   might alter the benefits, you would be grieving that.  This is

16   simply, so really they're one in the same.  The form is

17   somewhat incidental to the major dispute, and that is the

18   company's right to unilaterally change these benefits, is that

19   right?

20          MS. OLIVER:  That's right.  I mean, the problem with

21   these or the contract has a finite life, I've been a union

22   lawyer for a long time and I've done these retiree medical

23   cases, their difficult cases under ERISA, there's no question

24   about it.  But they do, whether people had vested benefits for

25   life and so forth, that can be a question of intent.  What they

14

1  signed at the time before they retired can play a big part in

2  that.  Well, if you negotiate as an employer their retiree

3  benefits in this contract, and then you do an end run around,

4  the union has them sign a form that says I acknowledge these

5  can be changed, that's why we grieved.  You can't do that --

6          THE COURT:  Without bargaining?

7          MS. OLIVER:  Exactly.

8          MR. HAYES:  May I add something, your Honor.  Well,

9  recently, in March of 2004, the company entered into a new

10  stipulation settlement with the union.  I think the language is

11  very specific as it pertains to retiree medicals.  What retiree

12  medical benefits, their members are entitled to during the term

13  of this contract, okay -- when a contract expires, it's the

14  company's position so does the obligation as far as any finite

15  benefits, any finite obligation.  And I think that's what at

16  issue, the union is trying to get by not the people who retire

17  under the contract.  Not during the term of the contract, but

18  going passed the term of the contract.

19          MR. SPRING:  They're trying to say they're vested

20  and locked down for life.

21          THE COURT:  I understand what they're saying, but

22  that's a merits position as opposed to, it strikes me, as

23  opposed to an arbitrability position.  I mean, put it this way.

24  Barring, with respect to any active employee who tries to

25  grieve this, barring an untimely death, they will certainty

15

1   become or the unfortunate closing of the plant, they will

2   certainly become a retiree some day.  I guess, getting back to

3   my original point, I understand the grievance now and I

4   understand the company's position that, among other things, as

5   a matter of substance of the collective bargaining agreement,

6   their position is incorrect.  But that having been said and

7   coupled with the fact that you have disavowed any intent to

8   bring any retirees on board, why isn't this arbitrable?

9            MR. SPRING:  Because I think they're trying to play

10  a game or end run to get to the issue of does the company have

11  a right to change for the retirees.  I mean, they may say it's

12  because of the form, because of actives, something had to

13  happen to them in the future, really they want to get to the

14  issue for the retirees.  There is still reluctance on our part

15  to say oh, great, they're just grieving on behalf of active

16  employees.  But there's nothing happening to the active

17  employees.

18           THE COURT:  I guess the narrow legal issue is

19  whether or not your status as an active employee should be

20  viewed differently where the consequences of what the company

21  is going to do will only materialize at the time when you have

22  become a retiree.

23           MR. SPRING:  And it may never materialize.

24           THE COURT:  Let's talk a little bit about bringing

25  this thing into some focus.  For the life of me, I'm willing to

16

1    be disabused of this, I cannot see why anybody needs any

2    discovery on this at all?

3              MR. SPRING:  The only discovery we wanted was to try

4    to find a grievance.

5              MS. OLIVER:  Your Honor, our collective bargaining

6    agreement does not require we give a detailed version.

7              THE COURT:  You just did.

8              MS. OLIVER:  I had to get to the point to move this

9    forward.  The labor agreement doesn't require that.  The labor

10   agreement requires we cite the chapter and verse -- that's been

11   violated.

12             THE COURT:  I'm looking at Article VII.

13             MR. SPRING:  Page 36.

14             THE COURT:  Section 1.  "Any complaint, grievance,

15   or dispute that may arise with respect to the application or

16   performance of this agreement between the company and the union

17   or its members shall be taken up for settlement in the simplest

18   and most direct manner.  A grievance is hereby defined as any

19   violation of the terms of this agreement," etc.  If present

20   members of the union are concerned about this form which

21   they're being required to sign, I understand full well the

22   company's substantive position on this, it would ultimately be

23   a loser at arbitration, under the clear language of that

24   section, this is arbitrable, because they are members of the

25   collective bargaining agreement.

17

1      MR. SPRING:  If it's a current member objecting to
2  the form, I agree with you.
3      THE COURT:  That's it as far as I'm concerned.
4  You're bound by what you just told me, that is the scope of the
5  class.  And it cannot include today, nor can it include
6  tomorrow, anyone other than an active, anyone other than a
7  member of the collective bargaining agreement, which by
8  definition means an employee.  Now, that having been said, do
9  we still have a dispute?
10      MS. OLIVER:  I don't think we do.  If they stopped
11  being active and the actives signed this form today, and
12  disavowed any other active that they may sign it, I wouldn't be
13  here.  I would not be here.  I wouldn't even need to arbitrate.
14      THE COURT:  They're not going to do that.  I'm just
15  saying, is there any longer -- I just heard the company say, I
16  don't want to put words in your mouth, but as defined, you
17  agree that it's arbitrable, as we have sharpened the group?
18      MR. HAYES:  As it pertains to active employees
19  during the term of this agreement.  It doesn't exceed the term
20  of this agreement.
21      MS. OLIVER:  A person who's an active who signs a
22  form like that -- if they want to file an ERISA complaint, that
23  the employer has cut their medical, what they file as an active
24  could have an effect on that suit.
25      THE COURT:  But, once again, we're wandering beyond

18

1    my very limited area of arbitrability.  That is a remedy issue,

2    that's an effects issue for the arbitrator, that isn't for the

3    court.

4              MR. HAYES:  I think the arbitrator has authority to

5    issue a ruling going beyond the term of the agreement.  That is

6    the union's end gain.

7              THE COURT:  Neither do I right now, I don't have

8    that issue before me.

9              MR. SPRING:  Can we have that on the record, we want

10   to make sure we're not waiving anything -- if the arbitrator

11   would exceed his or her authority.

12             THE COURT:  Then this case, it's shortly going to be

13   on the record resolved, it is explicitly understood that you

14   are not waiving any defenses that you might have.  To make it

15   crystal clear, as I understand it, in acceding to the

16   arbitrability of this dispute as it has been most recently

17   defined on the record, you want it to be crystal clear that you

18   are not waiving any procedural or substantive defenses that you

19   might have now or later with respect to the arbitration?

20             MR. SPRING:  That's correct.

21             THE COURT:  Then that's on the record, you are

22   protected on that, you have it.  Unless I hear any objection,

23   I'm going to indicate on the record for the reasons we just

24   previously talked about, that the parties have resolved this

25   matter.  I'm going to do it right now.  For the reasons we just

19

1   discussed on the record, with the benefit of the grievance

2   being more carefully defined, as well as the class of

3   individuals who would comprise the group on whose behalf the

4   union was arbitrating, that being restricted only to active

5   employees, the company now agrees that that dispute as

6   redefined or more sharply defined is arbitrable.  Since the

7   dispute before me was arbitrability, that issue has now been

8   resolved.  So in my view this case has been resolved.  The only

9   thing I'm going to ask you to do is file a Rule 41 dismissal of

10  this action.  Once again, for the record, in resolving the

11  dispute, all defenses, substantive or otherwise, that the

12  defendant might have and raise at arbitration are preserved.

13  All right, thank you, counsel.

14

15          (Whereupon, at 2:00 p.m., the proceedings were

16  concluded.)

17

18

19                              - - -

20

21

22

23

24

25

20

1                            C E R T I F I C A T E

2

3

4

5          I, Ronald J. Bench, certify that the foregoing is a

6    correct transcript from the record of proceedings in the

7    above-entitled matter.

8

9

10

11

12

13    _____

14    Ronald J. Bench

15

16

17

18

19

20

21

22

23

24

25